UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GREGORY J. AVEDISIAN and, ) <br> LINDA J. AVEDISIAN, ) <br>             Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SELECT PORTFOLIO SERVICING, INC., ) <br> AND U.S. BANK, NA, SUCCESSOR ) <br> TRUSTEE TO LASALLE BANK NATIONAL ) <br> ASSOCIATION, ON BEHALF OF THE ) <br> HOLDERS OF BEAR STEARNS ASSET ) <br> BACKED SECURITIES I TRUST 2005-HE10 ) <br> ASSET BACK CERTIFICATES SERIES ) <br> 2005-HE10, ) <br>             Defendants. ) | C.A. No.:1:16-cv-00654-S-PAS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS AMENDED COMPLAINT**

**I. INTRODUCTION**

Plaintiffs Gregory and Linda Avedisian ("Plaintiffs" or "Avedisian") state no legal basis to challenge a completed foreclosure sale. Plaintiffs were not lawfully entitled to force any loss mitigation upon default of their mortgage loan, including substantial debt reduction through a sort sale of the mortgaged property. Plaintiffs fail to articulate with specificity any violation of law by Select Portfolio Servicing, Inc. ("SPS") or U.S. Bank, N.A., as Successor Trustee (the "Trustee"). The Amended Complaint must be dismissed.

**II. BACKGROUND AND FACTUAL ALLEGATIONS**

Plaintiffs signed a promissory note dated April 14, 2005 in favor of original lender First Horizon Home Loan Corporation in the principal amount of $542,000 (the "Note"). (Amended

Complaint, ¶ 8; **Exhibit A**).[1] Plaintiffs also executed and delivered a mortgage securing the Note (the "Mortgage"). (Amended Complaint, ¶ 9; **Exhibit B**). First Horizon subsequently executed an Allonge to Note in blank. (**Exhibit A**). First Horizon assigned the Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), and an assignment dated June 1, 2005 was recorded in the Land Evidence Records. (Amended Complaint, ¶ 11; **Exhibit C**). On August 14, 2015, MERS executed a Corporate Assignment of Mortgage (the "Assignment") to convey the Mortgage to the Trustee, which Assignment was recorded in the Land Evidence Records on August 27, 2015. (Amended Complaint, ¶ 13; **Exhibit D**).

Avedisian ultimately defaulted under the Mortgage Loan. The Trustee, through its authorized servicer SPS, sought to enforce the Trustee's rights as holder of the Note and record title owner of the Mortgage (collectively the "Mortgage Loan"). Plaintiffs sought loss mitigation with SPS, including through a loan modification request which was denied on or about August 24, 2016. (Amended Complaint, ¶ 15). Plaintiffs filed an appeal, which was also denied. (Amended Complaint, ¶¶ 16, 17). SPS, on behalf of the Trustee, noticed a foreclosure sale of the Property, before Plaintiffs had "exhausted administrative remedies in violation of Regulation X." (Verified Complaint, ¶ 18). The foreclosure sale was noticed for November 21, 2016, with notice to Plaintiffs. (Amended Complaint, p. 8)

In response to a Consumer Financial Protection Bureau Complaint by Plaintiffs, on November 4, 2016, SPS offered Plaintiffs the opportunity to apply for a short sale of the Property or to surrender the Property. (Amended Complaint, ¶ 19). On December 1, 2016, Plaintiffs allegedly submitted an unspecified short sale offer. (Amended Complaint, ¶ 20).

---

[1] This Court has discretion to examine copies of records expressly referred to in the Verified Complaint, including recorded land records. Trans–Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir.2008) (quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16–17 (1st Cir.1998)); In re Colonial Bankers Mortgage Corp., 324 F.3d 12, 15 (1st Cir.2003).

On November 21, 2016, the same day that the foreclosure sale was scheduled, Plaintiffs commenced this action state court to restrain the sale. (Verified Complaint, p. 8). Although Plaintiffs did not pursue relief and no order enjoining the sale entered, the foreclosure sale was voluntarily postponed and rescheduled for December 21, 2016 again with notice to Plaintiffs. (**Exhibit E**). The foreclosure sale was completed on December 21, 2016.

After Defendants moved to dismiss the original Verified Complaint, Plaintiffs filed an Amended Complaint on February 24, 2017, and claimed for the first time that a short sale offer was still pending. Plaintiffs alleged, "Upon information and belief, the short sale offer is still in negotiation." (Amended Complaint, ¶ 21). Plaintiffs generally assert that the Trustee had no authority to foreclose the Mortgage. Plaintiffs also contend that they were entitled to loss mitigation upon default under the Mortgage Loan, to include approval of a short sale offer.

### III.  LAW AND ARGUMENT

A.  Standard of Review

Whether a complaint should survive a motion to dismiss depends upon whether the pleading satisfies the "plausibility" standard. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-557 (2007); Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 8–9 (1st Cir.2011). A complaint must allege facts that "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-557. This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. A plaintiff's factual allegations contained in a complaint must be specific enough to cross "the line from conceivable to plausible." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

"Where a complaint pleads facts that are 'merely consistent with' defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). A complaint that states "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" does not survive dismissal. Iqbal, 556 U.S. at 678. The Amended Complaint fails to state a viable claim for relief against the Trustee or SPS under these pleading standards.

     B.     <u>Plaintiffs Assert Contradictory Theories</u>

Plaintiffs' claims strain plausibility. Avedisian asserts that on November 4, 2016, they were offered the option to apply for a short sale or to surrender voluntarily the Property. Plaintiffs concede that they were not automatically entitled to sell the Property for less than the indebtedness owed on the Mortgage Loan. Yet, Plaintiffs delayed and allegedly submitted an unspecified short sale offer for the first time on December 1, 2016. (Amended Complaint, ¶ 20). Accordingly, Avedisian did not submit a formal short sale request "over 30 days prior to the foreclosure sale" originally scheduled for November 21, 2016 or postponed to December 21, 2016, contrary to the allegations. (Amended Complaint, ¶ 49).

Moreover, for the first time in the Amended Complaint filed on February 24, 2017, Plaintiffs suddenly asserted that short sale negotiations are still ongoing, again without providing any specifics. Plaintiffs' bare contention that "the short sale offer is still in negotiation" contradicts other allegations in the Amended Complaint. Specifically, Plaintiffs acknowledge a completed foreclosure sale and transfer of title to the Property on December 21, 2016, which precludes any possible short sale. Plaintiffs know that short sale negotiations were not on-going at the time the Amended Complaint was filed.

### C. Plaintiffs State No Basis For Declaratory Relief

The crux of Plaintiffs' claim in Count I challenging the foreclosure for lack of proper notice is that the Trustee did not have rights to enforce the Mortgage Loan, thereby allegedly rendering invalid the various foreclosure notices admittedly received by Plaintiffs. Tellingly, Plaintiffs omit any factual allegations to support the theory that no required notices were sent. Indeed, Plaintiffs filed the action to restrain the scheduled foreclosure sale thus establishing that Avedisian had notice. Rather, Plaintiffs, in formulaic fashion, merely recite that the Trustee "wrongfully published notice of sale without contractual or statutory authority" and that the sale "was not noticed or scheduled or advertised as required by the Note and Mortgage." (Amended Complaint, ¶¶ 23, 25). By Plaintiffs' argument, the Trustee's notice and publication of the foreclosure sale were not effective because the Trustee held no rights to enforce the Mortgage Loan. Just as in all prior cases which have rejected the same generic claim, Plaintiffs likewise fail to mount a plausible legal challenge to the Trustee's foreclosure activity.

Plaintiffs' conclusory assertions that the Trustee lacked the power to enforce the Mortgage through foreclosure are unavailing. The recorded documents referenced by Avedisian in the Amended Complaint establish without dispute that: (i) Avedisian granted the Mortgage to the original lender First Horizon to secure obligations due and owing under the Note; (ii) First Horizon assigned the Mortgage to MERS; and, (iii) MERS assigned the Mortgage to the Trustee. The chain of title is complete. This Court should disregard allegations that are contradicted by the terms of the documents incorporated into the Amended Complaint. See Clorox Co. P.R. v. Proctor & Gamble Consumer Co., 228 F.3d 24, 32 (1st Cir.2000) (citing Northern Indian Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 454 (7th Cir.1998) (documents attached to and incorporated into a complaint trump contradictory factual assertions)).

In the face of these documents, Avedisian fails to lodge any plausible challenge to the Trustee's power and authority to enforce the Mortgage. Avedisian's vague complaint about the lack of an endorsement of the Note to MERS is of no legal consequence. (Amended Complaint, ¶ 14). Avedisian does not challenge the Trustee's status as holder of the Note through the Allonge endorsed in blank. (**Exhibit A**). The Trustee possessed all rights to enforce the Note. See R.I. Gen. Laws § 6A–3–301. See also Mruk v. Mortgage Electronic Registration Systems, Inc., 82 A.3d 527, 533 (R.I. 2013) ("The [plaintiffs'] unsupported challenges to the validity of the endorsement in blank are not sufficient to create a disputed issue of material fact."); Ingram v. Mortgage Electronic Registration Systems, Inc., 94 A.3d 523, 528-529 (R.I. 2014). The Trustee, by operation of law, likewise possessed rights to enforce the Mortgage as the security for the obligations of Avedisian due and owing under the Note. See Bucci v. Lehman Bros. Bank, FSB, 68 A.3d 1069, 1087-1089 (R.I. 2013) (quoting Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282, 291-292 (1st Cir.2013)).

Avedisian's theory that the assignment of the Mortgage to MERS is ineffective due to a lack of endorsement of the Note to MERS contradicts well-settled law. See Bucci, 68 A.3d at 1069 (holding that the note and mortgage need not be held by the same entity for a valid foreclosure to take place). Indeed, this Court has expressly rejected the exact argument lodged by Avedisian that a mortgage assignment by MERS is void and ineffective because MERS did not contemporaneously hold the note. See Clark v. Mortgage Elec. Registration Sys., Inc., 7 F.Supp.3d 169, 178-180 (D.R.I. 2014). ("Finally, Mr. Clark asserts that the assignment is void because MERS did not hold both the note and the mortgage when it executed the assignment to Bayview. This argument appears to be a rehash of others that have been made against the MERS

system that have been uniformly rejected by the Rhode Island Supreme Court and the First Circuit.").

The assignments of record, including the Assignment, establish a complete chain of title to the Mortgage from the original mortgagee to the Trustee. Plaintiffs have no standing to raise latent defects in the assignment process, where such deficiencies would render the Assignment merely voidable and not void. See Cruz v. Mortgage Electronic Registration Systems, Inc., 108 A.3d 992, 997-998 (R.I. 2015) (citing and quoting Wilson v. HSBC Mortgage Services, Inc., 744 F.3d 1, 9 (1st Cir.2014)). Avedisian's veiled challenge to the MERS system has been amply analyzed and consistently rejected. See, e.g., Lister v. Bank of America, 8 F.Supp.3d 74, 82-84 (D.R.I. 2014), affirmed on other grounds 790 F.3d 20 (1st Cir. 2015) (citing and quoting Bucci); Rashid v. Mortgage Electronic Registration Systems, Inc., 2014 WL 1429237 (D.R.I April 14, 2014) (collecting cases); In re Mortgage Foreclosure Cases, No. 11-mc-88-M-LDA, 2013 WL 4735638 at *3 (D.R.I. Sept. 3, 2013) (recognizing that the MERS framework is consistent with Rhode Island law).

Avedisian's conclusory attack on the Assignment from MERS to the Trustee as "ineffective" because "the assignment was improperly signed and notarized" likewise fails to establish a viable claim for relief. An assignment of mortgage that is executed, acknowledged, notarized, and recorded carries a presumption of validity. Van Hoecke v. First Franklin Financial Corp., No. KC 2009-0743, 2013 WL 1088825, at *4 (R.I. Super. Ct., March 7, 2013); Cafua v. Mortg. Elec. Registration Sys., Inc., No. PC 2009-7407, 2012 WL 2377404, at *8 (R.I. Super. Ct. June 20, 2012). Avedisian's "unverified, conclusory statements concerning the authority of the individuals who executed the assignments of the Mortgage and the acknowledgement of the Mortgage are insufficient to rebut the strong presumption in favor of the

validity carried by the certificates of acknowledgements and recorded documents." Seng v. Mortg. Elec. Registration Sys., Inc., No. PC 2011-2784, 2013 WL 1490360, at *1 (R.I. Super. Ct. April 2, 2013).

Moreover, despite now disputing the Trustee's authority, Avedisian participated in the loan modification review process through SPS as servicing agent for the Trustee, thereby recognizing the rights of the Trustee under the Note and Mortgage. Indeed, the central focus and purpose of the Amended Complaint is to compel SPS on behalf of the Trustee to modify the defaulted Mortgage Loan through a short sale or otherwise. Avedisian does not assert that any party other than the Trustee or SPS on behalf of the Trustee has sought to enforce the Mortgage, or has the ability to modify the Mortgage Loan. See Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 354, 356 n. 6 (1st Cir.2013) ("We note also that Woods has stopped paying her mortgage and no financial institution other than Wells Fargo has sought to take action on account of that breach."). Therefore, Avedisian is estopped from contesting the Trustee's right and authority to enforce the Note and Mortgage. See Barrasso v. New Century Mortgage Corp., 2015 WL 1880559, at * 8 (Mass. Land Ct. April 14, 2015) (plaintiff estopped from denying the validity of a mortgage assignment and power to foreclose where plaintiff entered into a previous loan modification agreement with foreclosing mortgagee).

D. The Quiet Title Claim Must Be Dismissed

Plaintiffs fail to state a quiet title claim to challenge the Trustee's enforcement of the Mortgage Loan. Proof of legal title to property is an essential element of a quiet title action. See Lister v. Bank of America, N.A., 790 F.3d 20, 24-26 (1st Cir.2015) (citations omitted). Unless and until the mortgage has been extinguished by payment, a mortgagor such as Avedisian holds no legal title to property necessary to challenge a mortgage of record through an action to quiet

title.  Lister, 790 F.3d at 24-26.  Plaintiffs concede that the Mortgage Loan was never satisfied by payment in full, and was in default giving rise to the efforts by Avedisian to modify the loan to avoid foreclosure.  Consequently, Count II must be dismissed.

  E. The Fair Debt Collection Practices Act Claim Fails As a Matter of Law

  Avedisian's statutory claim under RIGL 19-14-8(f)(1) in Count III complaining of foreclosure activity allegedly where "there is no present right to possession of the property claimed as collateral through an enforceable security agreement" is based solely on the proposition that SPS and the Trustee had no authority to enforce the Mortgage upon default.  Avedisian's conclusory allegation on the non-existence of an enforceable security agreement is belied by the continued existence of the Mortgage of record, and the admission by Avedisian that the default under the Mortgage Loan precipitated loss mitigation efforts and ultimately spurred the original filing of this action.  In addition, as discussed above, the Trustee's rights under the Note and Mortgage, including the power to foreclose, are established as a matter of law.  Thus, Avedisian's unfair debt collection theory of recovery fails for the same reasons.

  Notwithstanding these deficiencies, Avedisian's claim for unfair debt collection practices under Rhode Island law based on foreclosure activity does not survive legal scrutiny.  Similar to the analysis applicable to the analog federal Fair Debt Collection Practices Act ("FDCPA") at 15 U.S.C. § 1692, et seq.,[2] the Trustee, as holder of the Mortgage, is not a "debt collector" under the statutory definitions governing RIGL 19-14.9-8(f)1), and the statute does not apply to the Trustee.  See Speleos v. BAC Home Loans Servicing, L.P., 824 F.Supp.2d 226, 233 (D.Mass.

---

[2] Where the language of the provision of the Rhode Island statute relied upon by Avedisian at RIGL 19-14.9-8(f)(1) is identical to the cognate federal FDCPA at § 1692f(6), this Court may look to cases interpreting the federal FDCPA in analyzing the state statutory claim.  See Laccinole v. Assad, C.A. No. 14–404 S, 2016 WL 868511, at * 7 (D.R.I. March 7, 2016) ("Accordingly, setting aside the immunity issue, Laccinole's RI FDCPA claims fail for the same reasons his FDCPA claims fail.").

{K0671741.1} 9

2011) ( FDCPA covers debt collection which is distinct from the enforcement of a security interest).  See also Pimental v. Wells Fargo Bank, N.A., C.A. No. 14–494S, 2015 WL 5243325, at *6-7 (D.R.I. Sept. 4, 2015) (analyzing "debt collector" under FDCPA in the context of foreclosure activity); Laccinole v. Twin Oaks Software Development, Inc., No. CA 13–716 ML, 2014 WL 2440400, at *6 (D.R.I. May 30, 2014).  "The restrictions of the FDCPA only apply to those defendants who meet the definition of 'debt collector.'"  O'Connor v. Nantucket Bank, 992 F.Supp.2d 24, 31-32 (D.Mass. 2014) (citation omitted).  A mortgagee is not a debt collector.  Lee v. BAC Home Loans Servicing, LP, 2013 WL 212615, at *3 (D.Mass. Jan. 18, 2013).  Similarly, conduct by SPS to enforce the Mortgage through foreclosure on behalf of the Trustee, as opposed to collecting money, is not actionable under the statute.

    The bare, formulaic assertion that SPS or the Trustee "acted fraudulently" and violated "Federal and OCC regulations relative to modifications and foreclosures" lacks all specificity to establish any plausible legal violation applying general pleading rules, or the more stringent "particularity" standard imposed by Fed. R. Civ. P. 9(b).  Moreover, to prevail on a claim of fraud, a party must establish an intentional misrepresentation of material fact made by the other party, which misrepresentation the party relied upon causing damage.  Women's Dev. Corp. v. City of Central Falls, 764 A.2d 151, 160 (R.I. 2001) (citing Travers v. Spidell, 682 A.2d 471, 472-473 (R.I. 1996)).  Here, Avedisian has not pled facts which would demonstrate any false statement of material fact, or detrimental reliance.  Accordingly, any claimed fraud must be summarily rejected.

    F.    <u>Plaintiffs Have No Legal Right to Loss Mitigation Upon Default</u>

    Avedisian's claim for "bad faith" short sale in Count IV fails to state a viable cause of action.  "In a short sale, the lender agrees to allow the borrower to sell the house for less than he

owes on the mortgage." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 69 n.3 (1st Cir.2014). Plaintiffs state no basis to compel SPS or the Trustee to accept a payment in satisfaction of the debt in an amount dramatically less than the outstanding balance due and owing. Neither SPS nor the Trustee owe a legal duty to Avedisian to modify the Mortgage Loan upon default. MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 49-494 (1st Cir.2013) (no duty to modify or consider modifying mortgage prior to foreclosure where no such obligation exists in the mortgage). The rote invocation of bad faith does not establish a claim. No independent cause of action in tort for unfair dealing exists. See A.A.A. Pool Serv. & Supply, Inc. v. Aetna Cas. & Sur. Co., 121 R.I. 96, 98, 395 A.2d 724, 725 (1978); see also Speleos v. BAC Home Loans Servicing, L.P., 755 F.Supp.2d 304, 312 (D.Mass. 2010) (no breach of covenant of good faith and fair dealing where note and mortgage did not obligate mortgagee to modify the loan); Nash v. GMAC Mortgage, LLC, 2011 WL 2470645, at *10 (D.R.I. May 18, 2011) (citations omitted) (rejecting various claims based upon failure or refusal to modify a loan). The mere fact that Avedisian wanted or hoped for a short sale of the Property is not actionable. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 92-93 (1st Cir.2014) (affirming dismissal of claim for lack of good faith where plaintiff only alleged that lender promised to consider request for a loan modification). See also FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 100-101 (1st Cir.2009) (creditor did not violate obligation of good faith by refusing to modify defaulted loan, noting, "When the borrower is in default, that necessarily alters the contours of the covenant of good faith and fair dealing."). Plaintiffs passing reference to "Regulation X" does not state any viable claim, particularly where a loan modification was never legally mandated or guaranteed. See Gamez v. Select Portfolio Servicing, Inc., C.A. No. 1:14-cv-14121-IT (D.Mass. Feb. 24, 2016) (citing and quoting Edwards v. Aurora Loan Servs., LLC, 791 F.Supp.2d 144, 151 (D.D.C.

2011) ("Plaintiffs' receipt of a HAMP modification is subject to a series of wholly discretionary decisions. . . [.]").[3]

To the extent that Avedisian asserts a breach of the implied covenant of good faith sounding in contract, that theory likewise fails as a matter of law. An implied covenant claim is predicated on a binding contract. Ide Farm & Stable, Inc. v. Cardi, 110 R.I. 735, 739, 297 A.2d 643, 645 (1972). Here, no enforceable, binding contract regarding a loan modification, to include a short sale, existed between Avedisian and SPS or the Trustee. See R.I. Bhd. of Corr. Officers v. Rhode Island, 264 F.Supp.2d 87, 93 (D.R.I. 2003) (when an agreement lacks a definite obligation on the part of one party, there is insufficient consideration to constitute a valid and enforceable bilateral contract).

Because Avedisian owed pre-existing payment obligations under the Mortgage Loan, the possible approval of a modification and acceptance of payment substantially less than the total debt did not constitute new bargained-for consideration. "It is a well-settled rule of law that past consideration will not support a promise." Jones v. Johnson and Wales University, 2010 WL 3703516, at * 5 (D.R.I Aug. 20, 2010) (quoting Meadows v. Langlais Constr. Co., 1984 WL 560340 at *2 (R.I.Super. July 19, 1984)). See also Nickerson-Reti v. Bank of America, N.A., 2014 WL 2945198, at * 8 (D.Mass. June 26, 2014) ("Defendant is correct that modified

---

[3] Plaintiffs' citation to "Regulation X" is an apparent reference to regulations at 12 C.F.R. § 1024 promulgated to implement the Real Estate Settlement Procedures Act ("RESPA"), at 12 U.S.C. §§ 2601, et seq.. Section 1024.41 concerning loss mitigation states, "Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." Further, § 1024.41 is enforced under § 2605 of RESPA. Any claimed violation of RESPA does not provide a legal basis for voiding the foreclosure or any other equitable relief that Avedisian may assert. Congress expressly precluded recovery for equitable relief under § 2605, and actual monetary damage is an essential element of a claim. See Jones v. Bank of New York, 2013 WL 3728382, at * 4 (D. Mass. July 12, 2013) ("Nonetheless, Jones cannot recover on this [RESPA] count because he fails to plead any actual damages from BANA's failure to respond.") (citations omitted); Okoye v. Bank of New York Mellon, 2011 WL 3269686, at *17 (D.Mass. July 28, 2011) (citations omitted).

{K0671741.1}                                12

mortgage payments, standing alone, would likely not constitute cognizable consideration."); Bosque v. Wells Fargo Bank N.A., 762 F.Supp.2d 342, 352 (D.Mass. 2011) (same).  A possible modification did not impose upon Avedisian any additional or new legal detriment not already existing under the Mortgage Loan.  There is no loss mitigation contract for Avedisian to sue on.  Thus, any claim for breach of the implied covenant of good faith summarily fails as a matter of law.  Crellin Technologies, Inc. v. Equipmentlease Corp., 18 F.3d 1, 10 (1st Cir.1994) ("Because the implied covenant exists 'so that the contractual objectives may be achieved,' it necessarily follows that where there is no contract, there is no duty.") (internal citation omitted).

Because the implied covenant cannot create rights and duties not otherwise provided in the parties' contractual relationship, "[i]t would therefore be an error to extend the implied covenant to encompass the duty to modify (or consider modifying) the loan prior to foreclosure where no such obligation exists in the mortgage."  MacKenzie, 738 F.3d at 493.  As Justice Rubine analyzed in rejecting a similar claim in the loan modification context:

> In the instant case, there were no contract terms which afford borrower any right or impose upon the Bank any obligation to modify a mortgage loan or to consider such modification. Rather than mandate the exercise of discretion, the mortgage contains clear and unambiguous language that Defendant may foreclose for a payment default, without first considering loan modification. Accordingly, without the Bank having any contractual obligation to modify a mortgage loan or to exercise any discretion with respect to modification, there are no facts to establish that the Bank either breached its obligation to modify borrower's loan or undertook to exercise such a contractual obligation arbitrarily. There being no obligation to exercise discretion to allow a borrower to modify the terms of the loan to avoid default and foreclosure, there can be no set of facts upon which this Court could find that the Bank exercised its contractual discretion arbitrarily or by improper means. As a result, the borrower has failed as a matter of law to establish a claim for breach of the implied warranty of good faith and fair dealing, and Defendants are entitled to judgment as a matter of law on such claim.

Miller v. Wells Fargo Bank, N.A., 2015 WL 1515942, at *10 (R.I. Super. March 30, 2015) (internal citation omitted).

In short, Avedisian cannot invoke the implied covenant to rewrite the Mortgage Loan. See AccuSoft Corp. v. Palo, 237 F.3d 31, 45 (1st Cir.2001); see also Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 238 (1st Cir.2013).

      G.      The Count for Injunctive Relief Must Be Stricken

Count V for an order to enjoin the foreclosure sale originally scheduled for November 21, 2016 does not state an affirmative claim for recovery.  "[A] claim for injunctive relief is not a standalone cause of action."  Doe v. Brown University, 2016 WL 715794, at * 16 (D.R.I. Feb. 22, 2016) (citations omitted).  Accord Payton Wells Fargo Bank, N.A., 2013 WL 782601, at *6 (D.Mass. Feb. 28, 2013).[4]

## IV.  CONCLUSION

    For the foregoing reasons, Defendants request this Court to dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.

                                      Respectfully submitted,

                                      **SELECT PORTFOLIO SERVICING, INC. AND U.S. BANK, N.A., AS SUCCESSOR TRUSTEE,**

                                      By their attorneys,

                                      /s/ Peter F. Carr, II
                                      Peter F. Carr, II (R.I. Bar #5343)
                                      **ECKERT SEAMANS CHERIN & MELLOTT, LLC**
                                      Two International Place, 16th Floor
                                      Boston, MA  02110-2602
                                      Telephone: 617.342.6800
                                      Facsimile: 617.342.6899
                                      pcarr@eckertseamans.com

Dated:  March 31, 2017

---

[4] The request to enjoin the foreclosure sale is also moot, where the rescheduled sale with notice to Plaintiffs was completed on December 21, 2016.

{K0671741.1}                              14

## **CERTIFICATE OF SERVICE**

  I hereby certify that on this date the foregoing document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those parties which are as non-registered participants.

                /s/ Peter F. Carr, II
                Peter F. Carr, II

Dated:  March 31, 2017