UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GREGORY J. AVEDISIAN and | : | |
| LINDA J. AVEDISIAN, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 16-654S |
| | : | |
| SELECT PORTFOLIO SERVICING, INC., | : | |
| and U.S. BANK, NA, successor trustee to | : | |
| LASALLE BANK NATIONAL ASSOCIATION, | : | |
| on behalf of the HOLDERS OF BEAR STEARNS | : | |
| ASSET BACKED SECURITIES I TRUST 2005- | : | |
| HE10 ASSET-BACKED CERTIFICATES | : | |
| SERIES 2005-HE10, | : | |
|     Defendants. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    This case was removed from Washington County Superior Court; it is now before the Court on Defendants' Fed. R. Civ. P. 12(b)(6) motion (ECF No. 14) to dismiss Plaintiffs' amended complaint (ECF No. 11) in its entirety. By filing this case, Plaintiffs sought to prevent or reverse the foreclosure of certain real estate located at 354 West Beach Road in Charlestown, Rhode Island, ("the property") and to recover damages for what they allege were wrongful foreclosure attempts. Plaintiffs have sued Defendant Select Portfolio Servicing, Inc. ("Select Portfolio") as the "alleged loan Servicer" and Defendant U.S. Bank, NA, successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2005-HE10 Asset-Backed Certificates Series 2005-HE10, ("U.S. Bank"), as the "alleged foreclosing entity." Finding that the amended complaint fails to clear the pleading bar set by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563

(2007) ("Twombly"), and Ashcroft v. Iqbal, 556 U.S. 662 (2009) ("Iqbal"), I recommend that Defendants' motion to dismiss be granted.

I.  FACTS AND TRAVEL[1]

Plaintiffs purchased the property on November 24, 1998. Compl. ¶ 43. On April 14, 2005, they entered into a loan "arrangement" with First Horizon Home Loan Corporation ("First Horizon") "through the execution of a purported promissory note" ("Note") in the face amount of $542,000. Compl. ¶ 8 (copy at ECF No. 14-2). On the same day, Plaintiffs executed a mortgage ("Mortgage") to First Horizon, "whereby Plaintiff agreed to transfer a defeasible fee interest in the subject property to secure the promissory note." Compl. ¶ 9 (copy at ECF No. 14-3). Soon after, on June 1, 2005, First Horizon "attempted to assign" the Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"). Compl. ¶ 11 (copy at ECF No. 14-4). Plaintiffs claim that this assignment of the Mortgage was "ineffective" because the Note was not endorsed to MERS. Compl. ¶ 12. Ten years later, on August 14, 2015, Plaintiffs allege that MERS "attempted to assign" the Mortgage to U.S. Bank. Compl. ¶ 13 (copy at ECF No. 14-5).

---

[1] Except as otherwise indicated, these facts are derived from Plaintiffs' amended complaint (ECF No. 11) ("Compl."), together with the undisputed versions of the Mortgage, Note and assignment documents referred to in the amended complaint, which Defendants attached to their motion. ECF Nos. 14-2 to 14-5. Consideration of documents not attached to the complaint in connection with a Fed. R. Civ. P. 12(b)(6) motion is permissible as long as they fall into one of the recognized "narrow exceptions." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 73-75 (1st Cir. 2014). These include "documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; or . . . documents sufficiently referred to in the complaint." Id.; see Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) ("It is well-established that in reviewing the complaint, we 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint.'") (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). Here, the Mortgage, Note and assignment documents are referenced repeatedly in the amended complaint and are central to Plaintiffs' claims. See Compl. ¶¶ 8, 9, 11-12, 13-14. On the face of the assignments are stamps indicating that both are recorded in the Charlestown land records. ECF Nos. 14-4 at 2, 14-5 at 2. Further, this is not a circumstance where Plaintiffs did not know that these documents were proposed for consideration at the Fed. R. Civ. P. 12(b)(6) phase, as occurred in Foley. 772 F.3d at 74. Here, Defendants' motion expressly invoked Clorox in asking the Court to consider them, ECF No. 14-1 at 5, and Plaintiffs' opposition, both by silence and by relying on and quoting from the text of the Mortgage and Note in their brief, acquiesces that their authenticity is undisputed. ECF No. 16 at 3.

Again, Plaintiffs allege that this assignment was "ineffective as the note was never endorsed to US Bank and the assignment was improperly signed and notarized." Compl. ¶ 14.

The "facts" portion of the amended complaint is silent regarding Plaintiffs' default of their obligation to pay the Note; the drafter has deftly omitted any facts about their compliance with their duty to pay. However, the fact of default is unavoidably embedded in the factual allegations that Plaintiffs first sought to modify the loan and later proposed a short sale.[2] Compl. ¶¶ 15-20, 30-31, 33, 50; see, e.g., Clark v. Mortg. Elec. Registration Sys., Inc., 7 F. Supp. 3d 169, 181 (D.R.I. 2014) (with no information demonstrating that plaintiff was not in default or explaining why he sought relief for a non-performing mortgage, conclusory allegation of non-default ignored); Era v. Morton Cmty. Bank, 8 F. Supp. 3d 66, 73 (D.R.I. 2014) (same). And default is expressly alleged in Plaintiffs' statement of claims, which assert that Defendants "failed properly to notice Avedisian of the default," Compl. ¶ 36, and that Defendants "failed to send Avedisian an updated default letter." Compl. ¶ 53.

Plaintiffs allege that they believe that Defendant U.S. Bank lacks both standing and the contractual and statutory authority to foreclose the Mortgage. Compl. ¶¶ 22-23. Inconsistently, Plaintiffs allege that, on August 10, 2016, they submitted to U.S. Bank and its servicer, Select Portfolio, a complete and compliant loan modification application package. Compl. ¶¶ 30-31, 33. On August 24, 2016, Defendants notified Plaintiffs that the loan modification application was declined and provided notice of the right to appeal. Compl. ¶¶ 15, 32. Within thirty days, Plaintiffs allege that they appealed the decision based on an increase in Plaintiff Gregory Avedisian's income and on Defendants' failure to conduct an interior inspection of the property.

---

[2] "In a short sale, the lender agrees to allow the borrower to sell the house for less than he owes on the mortgage." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 69 n.3 (1st Cir. 2014). It is an alternative to foreclosure that still requires the homeowner to forego ownership of his home. Id.

Compl. ¶ 16. Yet, Plaintiffs allege, Defendants made no counter-offer; instead, they began to advertise the property for foreclosure despite Plaintiffs not having "exhausted his administrative remedies in violation of Regulation X." Compl. ¶¶ 17-18. According to Plaintiffs, the foreclosure sale was not noticed, scheduled or advertised as required by the Note and Mortgage or by applicable state law. Compl. ¶¶ 23-27. The amended complaint has no factual allegations regarding the nature of any of these alleged deficiencies.

At some point, an unspecified person complained to the Consumer Financial Protection Bureau. As a result, on November 4, 2016, Defendants offered Plaintiffs the option of a short sale or voluntary surrender of the property. Compl. ¶ 19. On December 1, 2016, Plaintiffs claim that they "submitted a short sale offer" to Defendants. Compl. ¶¶ 19-20. Pleading "on information and belief," Plaintiffs allege that "the short sale offer is still in negotiation." Compl. ¶ 21. Without explaining how a short sale could be under negotiation after the property had been sold at foreclosure, Plaintiffs also allege that U.S. Bank "or the successful bidder" took a foreclosure deed to the property at the foreclosure sale, as well as that the foreclosure sale was set for November 21, 2016.[3] Compl. ¶ 44 & at 8.

Meanwhile, On November 21, 2016, Plaintiffs filed this case in Washington County Superior Court. ECF No. 1-1 at 1-9. Defendants removed it to this Court on December 13, 2016. ECF No. 1. Plaintiffs promptly filed, and shortly after withdrew, an emergency motion for preliminary injunction to postpone the foreclosure sale. ECF No. 5, Text Order of Dec. 22,

---

[3] This is an obvious error, carried over from the original complaint. According to other filings by Plaintiffs in this case, the foreclosure sale was originally scheduled for November 21, 2016, but was postponed. It was consummated on December 21, 2016. E.g., ECF No. 16 at 4 (Plaintiffs' brief states that, "[w]hile said short sale request was pending, Defendants foreclosed on December 21, 2016."). Defendants concur. ECF No. 14-1 at 3 ("The foreclosure sale was completed on December 21, 2016."). Because the latter date remains outside the pleading, for purposes of this Fed. R. Civ. P. 12(b)(6) motion, like a blinkered horse, the Court may not consider it.

2016. Defendants' first motion to dismiss, ECF No. 9, was mooted by the filing of the amended complaint on February 24, 2017. ECF No. 11. This motion followed. ECF No. 14.

## II.  AMENDED COMPLAINT

The amended complaint sounds in five Counts. Invoking the "Uniform Declaratory Judgment Act,"[4] and relying on the factual allegations that Defendants failed properly to notify Plaintiffs of the default and failed properly to review the loan modification application, Count I asks the Court to declare that the foreclosure is void, that Plaintiffs are the only owners of marketable title to the property, and that the conveyance, assignment and acknowledgment are void under R.I. Gen. Laws §§ 34-11-1, 24 and R.I. Gen. Laws § 34-12-1. Compl. ¶¶ 35-39. In Count II, Plaintiffs seek to void the foreclosure sale and quiet title in their name, pursuant to Rhode Island Gen. Laws § 34-16-4. In Count III, Plaintiffs allege that Defendants violated the Rhode Island Fair Debt Collections Practices Act, R.I. Gen. Laws § 19-14.9-8(f)(1) by foreclosing with "no present right to possession of the property claimed as collateral through an enforceable security agreement." Compl. ¶ 46. Count III also vaguely asserts that Defendants acted fraudulently and "in violation of Federal and OCC regulations relative to modifications and foreclosures." Compl. ¶ 47. Count IV alleges that Defendants acted in bad faith by attempting to foreclose "despite an ongoing administrative review process of his loan modification," including the short-sale. Compl. ¶¶ 48-51. Count V seeks a restraining order preventing "Defendant from foreclosing on the property on November 21, 2016." Compl. ¶¶ 53-57.

## III.  STANDARD OF REVIEW

In considering a Fed. R. Civ. P. 12(b)(6) motion, the Court must accept as true all plausible factual allegations in the complaint and draw all reasonable inferences in Plaintiffs'

---

[4] Plaintiffs do not say whether they rely on the federal (28 U.S.C. § 2201, *et seq.*) or state declaratory judgment act (R.I. Gen. Laws § 9-30-1, *et seq.*). For purposes of this motion, it does not matter.

favor. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In so doing, the Court is guided by the now familiar standard requiring enough facts to state a claim for relief that is plausible: if "the plaintiffs [can]not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570. As the Supreme Court explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Iqbal, 556 U.S. at 678 (internal citations and quotations omitted). For a complaint to survive a motion to dismiss, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The Court need not accept all allegations in the complaint as true – "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Consistent with the seminal decision in Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), federal courts must apply the Twombly/Iqbal standard even in cases where state law controls the substantive claims, Era, 8 F. Supp. 3d at 69. This includes cases removed from state court. Reilly v. Cox Enterprises, Inc., No. CA 13-785S, 2014 WL 4473772, at *3 (D.R.I. Apr. 16, 2014).

In Rhode Island, the Twombly/Iqbal standard contrasts with the standard applicable in the state courts, which still rely on Conley v. Gibson, 355 U.S. 41 (1957). See Chuun v. Mortgage Electronic Registration Systems, Inc., 84 A.3d 419, 422 (R.I. 2014). Because of this discrepancy, this Court has been liberal in permitting plaintiffs in removed cases to amend to align with the stricter federal standard. See Reilly, 2014 WL 4473772, at *9. Here, by contrast with Reilly, after the case had been pending in federal court and well aware of the risks because they were facing a motion to dismiss based on the Twombly/Iqbal standard, Plaintiffs amended

6

their complaint. Therefore, this amended pleading must contain plausible allegations of fact sufficient to permit the Court to infer that Defendants are liable to Plaintiffs for the alleged conduct. Plaintiffs' argument that the notice pleading standard should nevertheless be applied to this case is simply wrong and is rejected. Era, 8 F. Supp. 3d at 69.

## IV. ANALYSIS

### A. Count I: Declaratory Judgment

Count I is confusing. Although it purports to be based only on the allegations that Defendants failed properly to notify Plaintiffs of the default prior to initiating the foreclosure, and failed properly to review the loan modification application, it also appears to rest on Plaintiffs' bedrock assertions that U.S. Bank lacked standing and the authority to exercise the right of foreclosure in the Mortgage and that the foreclosure was void, so that the Court should declare that Plaintiffs own marketable title to the property. The Court's analysis of Count I focuses on the broader interpretation.

Viewed through this wider lens, the first leg supporting Count I is the allegation that U.S. Bank lacked standing or the authority to foreclose, which is grounded on what Plaintiffs insinuate are fatal deficiencies in its chain of title to the Mortgage. They refer to the "alleged" assignment that First Horizon "attempted" to make to MERS and the "alleged" assignment that MERS "attempted" to make to U.S. Bank. Compl. ¶¶ 12-14. As facts supporting the legal conclusion that these assignments were "ineffective," Plaintiffs claim that the U.S. Bank assignment was improperly signed and notarized and that the Note was not endorsed either to MERS or to U.S. Bank. Compl. ¶¶ 12, 14. There are several reasons why these "facts" are legally insufficient colorably to challenge U.S. Bank's status as the mortgagee with the power to foreclose.

7

First, Plaintiffs have not disputed that the Mortgage and the two assignments attached to Defendants' motion are true copies of the documents that they reference in the amended complaint.[5] These recorded documents establish that Plaintiffs' Mortgage was twice assigned by instruments with all the indicia of a proper assignment, including that the assignment to U.S. Bank was signed by a representative of MERS, whose signature appears to be properly notarized. ECF No. 14-5. With no more specificity as how this assignment is nevertheless somehow deficient, beyond the conclusory allegation that "the assignment was improperly signed and notarized," Compl. ¶ 14, Plaintiffs have failed to carry their burden of supporting this aspect of their challenge to U.S. Bank's standing and authority as mortgagee with any plausible facts. See Rezende v. Ocwen Loan Servicing, LLC; U.S. Bank, N.A., No. 16-1931, slip op. at 5-6 (1st Cir. Aug. 25, 2017) (mortgagor lacks standing to challenge assignment that may be voidable, but is not void as a matter of law); Hoecke v. First Franklin Fin. Corp., No. KC 2009-0743, 2013 WL 1088825, at *4 n. 5 (R.I. Super. Ct., March 7, 2013) (assignment executed and recorded in accordance with § 34-11-1 is presumptively valid) (citing Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 293 (1st Cir. 2013); see Seng v. Mort. Elec. Registration Sys., Inc., No. PC 2011-2784, 2013 WL 1490360, at *4 (R.I. Super. Ct. April 2, 2013) ("acknowledged deeds and mortgages of real estate will not be set aside absent clear and convincing evidence that the certificate of acknowledgment is false").

Second, Plaintiffs' reliance on the alleged fact that the Note was not endorsed either to MERS or to U.S. Bank, Compl. ¶¶ 12, 14, is unavailing because that fact is legally immaterial."[6]

---

[5] See n.1, *supra.*

[6] Defendants assert that U.S. Bank holds the Note based upon an "Allonge to Note," endorsed in blank and appended to the Note; they contend that the Allonge confers the legal authority to enforce the Note without the need for an assignment. Plaintiffs make no reference to the Allonge in the amended complaint. Therefore, the Court has not considered it.

According to settled Rhode Island law, U.S. Bank's status as the assignee of the Mortgage gives it the right to enforce the Mortgage as the security for Plaintiffs' obligations under the Note. It does not need also to be the holder of the Note. Bucci v. Lehman Brothers Bank, FSB, 68 A.3d 1069, 1087-89 (R.I. 2013); see also Culhane, 708 F.3d at 292 ("The law contemplates distinctions between the legal interest in a mortgage and the beneficial interest in the underlying debt. These are distinct interests, and they may be held by different parties."). Indeed, this Court has expressly rejected the proposition that a mortgage assignment was ineffective because the mortgage holder did not contemporaneously hold the note. Clark, 7 F. Supp. 3d at 182; Era, 8 F. Supp. 3d at 71; see also Mruk v. Mortg. Elec. Registration Sys., Inc., 82 A.3d 527, 537 (R.I. 2013) ("note and the mortgage did not need to be held by one entity").

Third, Plaintiffs' allegations about the insufficiencies and ineffectiveness of the Mortgage, Note and the two assignments are belied by their own conduct by which they acknowledge that they understood that U.S. Bank had the power to foreclose and that Select Portfolio was acting as its servicer. Indeed, much of their amended complaint is focused on the alleged impropriety of Defendants' reaction to Plaintiffs' attempts to avoid foreclosure by negotiating with U.S. Bank regarding a loan modification or a short sale. This conduct estops Plaintiffs from denying U.S. Bank's right to foreclose. Barrasso v. New Century Mortg. Corp., 69 N.E.3d 1010, 1015, review denied, 477 Mass. 1104 (Mass. App. Ct. 2017) (modification agreement operated to estop mortgagor from claiming that any entity other than defendant held mortgage); cf. Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 356 & n.6 (1st Cir. 2013) (vague allegation that note might be forgery amounts to "rabbit hole of baseless suspicion" down which court declined to travel, especially where "no financial institution other than [defendant] has sought to take action on account of that breach").

Finally, the entire proposition that the assignments were "ineffective" founders on the cases holding that a mortgagor lacks standing to challenge an assignment by attacking the mode of execution of the assignment because such a defect renders the assignment merely voidable, and not void. Culhane, 708 F.3d at 291 (applying Massachusetts law); see Proal v. J.P. Morgan Chase Bank, N.A., No. 16-2150, slip op. at 5 (1st Cir. July 18 2017) (applying Massachusetts law, mortgagor lacks standing to challenge assignment on grounds that it is voidable due to lack of authority of signatory); Mruk, 82 A.3d at 537 (citing Culhane, adopting Massachusetts approach as Rhode Island law). For example, in Era, this Court rejected the plaintiff's conclusory allegation that "[t]he assignment is void" because it was based only on the fact that the assignment was not duly executed. 8 F. Supp. 3d at 70. The Court held that the plaintiff lacked standing to attack the assignment on such a ground, which would render it voidable, but not void: "[e]ven assuming that these averments are true, as we must for purposes of deciding the motion to dismiss, [plaintiff's] Complaint does not contain any allegations supporting her conclusion that the assignment is void, which would give her standing to challenge it." Id.; see also Clark, 7 F. Supp. 3d at 179 (motion to dismiss granted because plaintiff has no standing to seek redress for assignment allegedly made without authority; if assignment was outside of authority of signatory, it is merely voidable). The Rhode Island Supreme Court has also recognized that defects in the assignment process render the assignment merely voidable and not void and that the mortgagor lacks standing to challenge an assignment except on grounds that it is void. Cruz v. Mortg. Elec. Registration Sys., Inc., 108 A.3d 992, 997-98 (R.I. 2015).

Based on the foregoing, I find that Plaintiffs' challenge to U.S. Bank's standing as mortgagee and authority to foreclose on the property fails to state a claim.

There is no need to linger over the second leg supporting Count I – Plaintiffs' utterly conclusory allegations that the Defendants "failed to properly notice [Plaintiffs] of the default prior to noticing and advertising the foreclosure sale," or that the foreclosure sale was not "noticed or scheduled or advertised as required by the Note and Mortgage," or that it was not "in compliance with statutory mandates and . . . with the plain language in the Note and Mortgage." Compl. ¶¶ 25-27, 36.  With no facts, never mind plausible facts, from which the Court might "draw the reasonable inference that defendant is liable of the misconduct alleged" with regard to any of these allegations, Twombly/Iqbal require that they be disregarded.  Iqbal, 556 U.S. at 678.

The last leg supporting Count I is Plaintiffs' claim that Defendant failed properly to review Plaintiffs' loan modification package before proceeding to foreclosure.  Compl. ¶ 36. The specific claim is focused on the allegation that Defendants denied the loan modification application on August 24, 2016, yet did not inform Plaintiffs of the option of short sale or voluntary surrender until November 4, 2016, so that when the foreclosure was being advertised, Plaintiff had not "exhausted [their] administrative remedies under Regulation X."  Compl. ¶¶ 15-19, 30-33.

Regulation X, specifically 12 C.F.R. § 1024.41(c)(1)(i) & (ii), requires a mortgage servicer to evaluate the borrower for all loss mitigation options available and to provide written notice stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower.  Regulation X is enforceable pursuant to section 6(f) of the Real Estate Settlement Procedures Act ("RESPA").  12 U.S.C. § 2605(f).  This enforcement provision does not entitle the borrower to injunctive relief or to a declaration of title, as Plaintiffs seek in Count I.  To the contrary and consistent with the statutory language in 12 U.S.C. § 2605(f)(1)(A-B), RESPA requires a plausible allegation of actual money damages specifically caused by the violation,

which Plaintiffs have not alleged.[7] Jones v. Bank of New York, C.A. No. 12-11503-RWZ, 2013 WL 3728382, at *4 (D. Mass. July 12, 2013) (failure to plead any actual damages fatal to RESPA claim); Torres v. Wells Fargo Home Mortg., Inc., No. C 10-04761, 2011 WL 11506, at *8 (N.D. Cal. Jan. 4, 2011) (at pleading stage, RESPA plaintiff must allege actual pecuniary loss causally linked to RESPA violation). In any event, with a pleading so vague regarding the loss mitigation communications between Plaintiffs and Defendants, and with no plausible facts establishing a failure to comply with Regulation X,[8] the amended complaint is insufficient to permit the Court to ascertain whether Plaintiffs can plausibly allege a violation of Regulation X. Finally, Plaintiffs' Regulation X-based allegation fails as a matter of law because the amended complaint does not purport to state a claim under RESPA, which is the enforcement vehicle for Regulation X. 12 C.F.R. § 1024.41.

To recap, every permutation of the claims embedded in Count I fails to state a plausible basis for declaratory judgment. Based on the foregoing, and applying the Twombly/Iqbal standard, I recommend that Count I be dismissed.

### B.      Count II: Quiet Title Claim

---

[7] Count I seeks only declaratory relief and has no claim for money damages. If the Court were to read the amended complaint as asserting this Regulation X claim pursuant to Count IV, which is based on bad faith in the processing of the loan modification and short sale, the pleading remains deficient even though Count IV has a prayer for "all damages allowable." Compl. at 7. As Jones and Torres hold, a RESPA claimant must allege specific actual damages, causally linked to the Regulation X violation. Jones, 2013 WL 3728382, at *4; Torres, 2011 WL 11506, at *8. Nothing in the amended complaint satisfies this requirement.

[8] Plaintiffs allege only that, after they appealed the loss mitigation denial, Defendants initiated foreclosure proceedings, but a complaint to the Consumer Financial Protection Bureau resulted in the option of short-sale or surrender becoming available to them. Compl. ¶¶ 15-19, 30-33. At the time that occurred, on November 4, 2016, the foreclosure apparently was already set for November 21, 2016. Compl. at 8. Meanwhile, this case was filed on November 21, 2016. After filing the litigation, Plaintiffs claim that they made a short sale "submission" on December 1, 2016; the amended complaint plainly permits the inference, but does not say, that the foreclosure was postponed. Without more, it is impossible to draw the inference that Select Portfolio failed to comply with the Regulation X obligation to "evaluate the borrower for all loss mitigation options available" and to advise them in writing of "the servicer's determination of which loss mitigation options, if any, it will offer." 12 C.F.R. § 1024.41(c)(ii) & (iii).

Plaintiffs seek to void the foreclosure sale and quiet title in their name pursuant to R.I. Gen. Laws § 34-16-4.  Proof of legal title to the property is an essential element of a quiet title action.  Lister v. Bank of Am., N.A., 790 F.3d 20, 24 (1st Cir. 2015).  The Rhode Island Supreme Court has held that the bank or mortgagee holds legal title to a mortgaged property until the mortgage debt is paid in full, Bucci, 68 A.3d at 1078, while the mortgagor holds only equitable title.  Lemelson v. U.S. Bank Nat. Ass'n, 721 F.3d 18, 23 (1st Cir. 2013).  With no colorable challenge to U.S. Bank's status as mortgagee with legal title to the property, Plaintiffs have no right to quiet the title.  Therefore, their quiet title claim is subject to dismissal.  Rezende, No. 16-1931, slip op. at 4 (mortgagor lacks standing to bring quiet title action while mortgage remains in effect); Clark, 7 F. Supp. 3d at 182 (with no standing to challenge assignment of mortgage, MERS had right to foreclose; quiet title claim dismissed); Era, 8 F. Supp. 3d at 74 (where mortgagee had clear chain of title and right to foreclose; mortgagor's quiet title claim dismissed).  Accordingly, I recommend that Count II, the action to quiet title, be dismissed.

### C.     Count III: Violation of Rhode Island Fair Debt Collections Practices Act

Plaintiffs allege that both Defendants violated the Rhode Island Fair Debt Collections Practices Act ("RI-FDCPA"), R.I. Gen. Laws § 19-14.9-8(f)(1).  Compl. ¶ 46.  In pertinent part, it provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Such unfair or unconscionable means shall include, but not be limited to: . . . (f) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if: (1) There is no present right to possession of the property claimed as collateral through an enforceable security interest.

R.I. Gen. Laws § 19-14.9-8(f)(1). Because the wording of RI-FDCPA mirrors the federal Fair Debt Collections Practices Act ("FDCPA") (15 U.S.C. § 1692f(6)(A)), this Court has held that

13

RI-FDCPA may be construed by reference to interpretations of the federal statute. Laccinole v. Assad, C.A. No. 14-404S, 2016 WL 868511, at *7 (D.R.I. Mar. 7, 2016).

The primary factual basis for Plaintiffs' RI-FDCPA claim is their legally insufficient allegation that Defendants lacked any rights under the Mortgage. The claim fails under Twombly/Iqbal because Plaintiffs have failed to plead plausible facts from which the Court may infer that U.S. Bank is not the duly authorized assignee of the Mortgage with the present right to foreclose. See Clark, 7 F. Supp. 3d at 180 (in absence of plausible facts challenging mortgage assignment, mortgagee has present right to foreclose). Equally deficient is Plaintiffs' alternative pleading that Defendants acted fraudulently in some unspecified way in violation of unspecified federal regulations "relative to modifications and foreclosures." Compl. ¶ 47. The Court need not look further than the strict requirement of Fed. R. Civ. P. 9(b) that fraud must be pled "with particularity" as to the "circumstances constituting fraud or mistake." With no plausible allegations undermining U.S. Bank's status as mortgagee with the present right to foreclose and nothing even suggesting fraud, Count III should be dismissed. See Clark, 7 F. Supp. 3d at 181-82 (vague allegations that "mortgage is void due to fraud" dismissed pursuant to Rule 9(b) of the Federal Rules of Civil Procedure); Era, 8 F. Supp. 3d at 74 (fraud allegations based on information and belief insufficient to state claim).[9]

I recommend that Count III for the violation of Rhode Island's Fair Debt Collections Practice Act be dismissed.

    **D.**    **Count IV: Bad Faith – Short Sale**

---

[9] U.S. Bank also challenges Plaintiffs' RI-FDCPA claim on grounds that it is not a "debt collector." The Court does not credit this argument – R.I. Gen. Laws § 19-14.9-3(5) defines a "debt collector" to include "a person who uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the enforcement of security interests."

Seeking unspecified damages in tort, as well as relief in equity, in Count IV, Plaintiffs claim that Defendants acted in bad faith when they attempted to foreclose on the property while Plaintiffs were still trying either to modify the loan or short-sell to avoid foreclosure.  Because, as Plaintiffs concede, ECF No. 16 at 6, they have no right to loss mitigation, because Defendants do not owe them the legal duty to accept less than the outstanding balance due and owing, and because no loss mitigation agreement was formed with Defendants, Count IV does not state a cause of action under Rhode Island or federal law.  See MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 493 (1st Cir. 2013) (mortgagee owes no duty to modify or consider modifying mortgage prior to foreclosure); Nash v. GMAC Mortg., LLC, No. CA 10-493 S, 2011 WL 2470645, at *10 (D.R.I. May 18, 2011), adopted, No. CA 10-493 S, 2011 WL 2469849 (D.R.I. June 20, 2011) (dismissing claim of breach of implied covenant of good faith and fair dealing based on absence of mortgagee's duty to engage in loss mitigation); Speleos v. BAC Home Loans Servicing, L.P., 755 F. Supp. 2d 304, 312 (D. Mass. 2010) (covenant of good faith and fair dealing not breached because neither the note nor the mortgage obligated mortgagee to modify the loan); A.A.A. Pool Serv. & Supply, Inc. v. Aetna Cas. & Sur. Co., 395 A.2d 724, 725-26 (R.I. 1978) (no cause of action for unfair dealing in the absence of contractual breach).

A mortgagee has a duty at common law to "protect the interests of the mortgagor in exercising a power of sale in a mortgage"; however, any implied covenant of good faith arising from that duty cannot create or establish rights or duties beyond the scope of the mortgage contract.  MacKenzie, 738 F.3d at 493, (quoting Teixeira v. Fed. Nat. Mortg. Ass'n, C.A. No. 10-11649-GAO, 2011 WL 3101811, at *2 (D. Mass. July 18, 2011)).  The dashing of a mortgagor's hopes or expectations of good faith in regards to a short sale or loan modification does not support a viable cause of action.  See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87,

92-93 (1st Cir. 2014) (affirming dismissal of promissory estoppel claim where mortgagee rejected application for loan modification after promising to consider it).  Notably, Regulation X does not impose the duty on a servicer to provide a borrower with any specific loss mitigation option.  12 C.F.R. § 1024.41; see also Miller v. Wells Fargo Bank, No. KC-11-0060, 2015 WL 1515942 (R.I. Super. Ct. Mar. 30, 2015) (with no obligation to allow borrower to modify the terms of loan to avoid default and foreclosure, "there can be no set of facts upon which this Court could find that the Bank exercised its contractual discretion arbitrarily or by improper means").  At bottom, a bad faith claim based on a failed attempt at loss mitigation can be actionable only if it is predicated on a binding contract; in that event, it may take the form of a claim of breach of the covenant of good faith and fair dealing, which is implied in the binding contract.  See Ide Farm & Stable, Inc. v. Cardi, 297 A.2d 643, 645 (R.I. 1972).

The amended complaint here is clear that Defendants never agreed to loss mitigation and never accepted any short sale proposal, nor does either the Mortgage or the Note contractually obligate Defendants to permit a short sale or to offer or consider a loan modification.  See Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 10 (1st Cir. 1994) ("Because the implied covenant exists 'so that the contractual objectives may be achieved,' it necessarily follows that where there is no contract, there is no duty.") (quoting Ide Farm, 297 A.2d at 645).  Accordingly, Plaintiffs cannot assert a claim based on the allegation that Defendants acted in bad faith in the manner of processing either the loan modification or short sale.

Based on the foregoing, I recommend that Plaintiffs' Count IV, for Bad Faith-Short Sale, be dismissed.

  **E.  Count V: Restraining Order**

In the final count, Plaintiffs seek a restraining order preventing "Defendant from foreclosing on the property on November 21, 2016." Compl. ¶ 57. No affirmative claim for recovery is stated. Recognizing that "a claim for injunctive relief is not a standalone cause of action," Doe v. Brown Univ., 166 F. Supp. 3d 177, 197 (D.R.I. 2016), a request for injunctive relief is "merely a remedial measure disguised as a cause of action" that survives only if the Court rules in Plaintiffs' favor on any of the previous Counts. Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 16 (1st Cir. 2014). With all of the prior Counts recommended for dismissal, the Count seeking only an injunction must suffer a similar fate. Id. ("As we uphold the dismissal of the first seven counts, it inevitably follows that the Wilsons are not entitled to an injunction under any circumstances, and the district court correctly dismissed this count."). In any event, Plaintiffs ask the Court to prevent a foreclosure on November 21, 2016; as that date has come and gone, this prayer is moot. Town of Portsmouth, R.I. v. Lewis, 813 F.3d 54, 58 (1st Cir. 2016) (case is moot "when the court cannot give any effectual relief to the potentially prevailing party"). I recommend that Count V be dismissed.

### F. Breach of Paragraph 22 of Mortgage

In tacit recognition that Defendants' assault on their amended complaint is likely to be sustained, Plaintiffs' opposition brief opens with Paragraph 22 of the Mortgage, which they set out in full; they argue that Defendants' failure "to properly notice Plaintiffs of their default" is in breach of its obligations." ECF No. 16 at 4. Despite the reality that whatever notice Plaintiffs received of their default is a fact that is within their knowledge and control, they admit that they have no facts to support this claim, instead hoping "on information and belief, subject to further discovery," to find some. Id.; see Giroux v. U.S. Bank Nat'l Ass'n, C.A. No. 17-299 S, 2017

WL 3394590, at *1 (D.R.I. August 7, 2017) (Paragraph 22 of mortgage agreement dictates content of notice of default sent to mortgagor).

No claim of breach of contract based on Paragraph 22 of the Mortgage was included in the amended complaint – the attempt to inject one now is a Hail Mary pass to save a pleading that otherwise fails to state a claim. United States v. George, 676 F.3d 249, 251 (1st Cir. 2012) ("A Hail Mary pass in American football is a long forward pass made in desperation at the end of a game, with only a small chance of success."). I recommend that the Court disregard it.

## V. CONCLUSION

For the foregoing reasons, I recommend that Plaintiffs' amended complaint (ECF No. 11) be dismissed in its entirety.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 29, 2017